**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **CRIMINAL NO.: 1:23-CR-044 (RJL)** |
| | ) | |
| **REFUGIO VERONICA QUINTERO** | ) | |
| **MORENO,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America respectfully submits this sentencing memorandum in connection with the above-captioned matter. The sentencing of Refugio Veronica Quintero Moreno ("Quintero") is scheduled for April 9, 2024. On July 3, 2023, Quintero pleaded guilty pursuant to a plea agreement to one count of conspiracy to import five kilograms or more of cocaine, 500 grams or more of methamphetamine, and 400 grams or more of fentanyl into the United States; and one count of conspiracy to distribute Ritalin, five kilograms or more of cocaine, 500 grams or more of methamphetamine, and 400 grams or more of fentanyl within the United States. For the reasons set forth herein, the government requests that this Court sentence Quintero to 135 months' incarceration, five years of supervised release, and the mandatory $100 special assessment.

## I.    FACTUAL BACKGROUND

Quintero admitted that starting in January 2020 and continuing up to and including April 6, 2022, she was part of a conspiracy in the country of Mexico, the State of Arizona, the District of Columbia, and elsewhere. ECF No. 84. The object of the conspiracy was to import fentanyl, cocaine, and methamphetamine into the United States and distribute those drugs, as well as Ritalin, throughout the United States. ECF No. 1-1 at 4, ¶ 10. During the conspiracy, Quintero and her co-conspirator, Benjamin Soto, Jr. ("Soto"), were employees at a FedEx Ship Center in Nogales,

Arizona (hereinafter, "FedEx Nogales"). *Id*. Soto and Quintero would accept packages containing narcotics from drug couriers without requesting identification or payment. ECF. No. 1-1 at 9-10, ¶ 28. They would then mail the packages, utilizing existing, compromised FedEx business accounts that belonged to legitimate companies without the knowledge or authorization of those companies. *Id*. at 4, ¶ 10. They sent the packages priority overnight shipping to make it more difficult for law enforcement to identify and interdict packages before they reached their destination. *Id*. at 6, ¶ 17. Quintero admitted that she knew that the drug couriers from whom she accepted packages were not affiliated with the companies whose FedEx business accounts they were using to ship the packages. ECF No. 84.

Quintero knew that the packages received from the drug couriers contained controlled substances; and she knew that these narcotics were being illegally imported into the United States for further distribution via these FedEx shipments. *Id*. During the course of the conspiracy, packages containing fentanyl, methamphetamine, cocaine, heroin, and Ritalin were shipped from FedEx Nogales to locations around the United States, including the District of Columbia. ECF No. 1-1 at 6, ¶ 18, and 8, ¶ 25.

For example, surveillance video from FedEx Nogales showed that at approximately 2:00 pm MST, on March 29, 2021, Quintero generated and affixed a shipping label on a package, based on information she obtained on her personal cellular phone, while no customers were in the office of FedEx Nogales. The parcel, tracking number 785349336246, was sent under a legitimate FedEx business account, Otis Elevator's, without the knowledge or authorization of that company. FBI agents seized this parcel in Galesburg, Illinois, and testing revealed that the package contained five pounds of methamphetamine. ECF No. 1-1 at 4-5, ¶¶ 11, 12, and 15; *see also* Images 1-5 below, and Exhibit A.



*Image 1 – Quintero at desk with package by her side and phone in her hand*



*Image 2 – Quintero at kiosk with phone in her hand and package on her desk*



*Image 4 – Quintero affixing the new label on the package*



*Image 4 – Quintero with receipt for package*



*Image 5 – Contents of package seized by FBI in Galesburg, Illinois*

Between January 2020 and late 2021, Soto and Quintero received hundreds of packages from drug couriers and then shipped these packages using compromised business accounts or shell company accounts set up by couriers. ECF No.1-1 at 8, ¶ 25. In just three months—August 25, 2021 to November 4, 2021—96 parcels were sent from FedEx Nogales that matched the scheme used by the conspirators to ship drugs. *Id*. at 6, ¶ 18. Law enforcement successfully seized 21 of the 96 parcels, which contained controlled substances, including methamphetamine, cocaine, fentanyl, heroin, and Ritalin. *Id*. The fentanyl was in both powder form and in the form of fake oxycodone 30mg tablets. *Id*. Every package identified and seized by law enforcement either contained drugs, or in the case of one package, was a test package containing a rock that was wrapped in cellophane and concealed in a metal canister—similar to how drugs were packaged in other parcels. *Id.* at 7, ¶ 21.

5

Throughout the duration of the conspiracy, Quintero and her co-conspirators were accountable for importing and distributing at least 33 kilograms of methamphetamine, seven kilograms of fentanyl, 19 kilograms of cocaine, and one kilogram of heroin. ECF No. 84. Quintero received cash payments for many of the packages that she processed for shipment. *Id.*

## II.      PROCEDURAL HISTORY

On February 9, 2023, a federal grand jury returned a two-count Indictment charging Quintero with conspiracy to import five kilograms or more of cocaine, 500 grams or more of methamphetamine, and 400 grams or more of fentanyl into the United States, in violation of 21 U.S.C. §§ 952(a), 960(b)(1)(B)(ii), 960(b)(1)(F), 960(b)(1)(H), and 963 (Count One), and conspiracy to distribute and possess with intent to distribute Ritalin, five kilograms or more of cocaine, 500 grams or more of methamphetamine, and 400 grams or more of fentanyl, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii)(II), 841(b)(1)(A)(vi), and 841(b)(1)(A)(viii), and 846 (Count Two). ECF No. 17. On July 3, 2023, Quintero pleaded guilty pursuant to a plea agreement to the Indictment. ECF No. 83.

## III.     STATUTORY PENALTIES

As noted by the plea agreement, Quintero faces a maximum term of life imprisonment, a fine not to exceed $10,000,000, and a period of supervised release of at least five (5) years.

## IV.     THE SENTENCING GUIDELINES AND GUIDELINES ANALYSIS

The Sentencing Guidelines are advisory, not mandatory. *United States v. Booker*, 543 U.S. 220, 258-60 (2005). However, the Supreme Court held in *Booker* that sentencing courts must consider the Guidelines in formulating an appropriate sentence. *Id.* In *Gall v. United States*, 552 U.S. 38 (2007), the Supreme Court set forth the procedure for sentencing courts to follow in light of *Booker*:

> [A] district court should begin all sentencing proceedings by
> correctly calculating the applicable Guidelines range. As a matter of
> administration and to secure nationwide consistency, the Guidelines
> should be the starting point and the initial benchmark.

552 U.S. at 49 (citation omitted).

The government agrees with the Guidelines analysis for Counts One and Two as calculated by the U.S. Probation Office in the Presentence Investigation Report, ECF No. 123 ("PSR"). PSR ¶¶ 41-54. The U.S. Probation Office calculated the applicable Guidelines range as follows. Quintero is held accountable for importation and distribution of 33 kilograms of methamphetamine, seven kilograms of fentanyl, 19 kilograms of cocaine, and one kilogram of heroin, resulting in a base offense level of 36 under U.S.S.G. §§ 2D1.1(a)(5), (c)(2). PSR ¶ 45. The U.S. Probation Office applied a two-level increase under Section 2D1.1(b)(5) of the Guidelines, because Quintero's offense involved the importation of methamphetamine that she knew was imported unlawfully. PSR ¶ 46. The PSR includes a two-level reduction pursuant to the safety-valve provision laid out in 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2(a). PSR ¶ 47. Quintero accepted responsibility for the offense and timely notified the government of her intention to enter a guilty plea, and a three-level reduction was applied, pursuant to Section 3E1.1(a) and 3E1.1(b) of the Guidelines. PSR ¶¶ 52-53. The total offense level is 33. PSR ¶ 54.

Quintero has one known criminal conviction, a misdemeanor assault charge from 2017 in the Tucson Municipal Court in Tucson, Arizona. PSR ¶ 56. The Probation Officer correctly identified that Quintero's criminal history score is one and the resulting criminal history category is I. PSR ¶ 57.[1]

---

[1] Amendments to the U.S. Sentencing Guidelines that went into effect on November 1, 2023, make defendants who meet specified criteria eligible for an additional two-level reduction pursuant to the "zero-point offender" provision at U.S.S.G. § 4C1.1. However, Quintero is not eligible for relief under this amendment based on her prior conviction noted in PSR ¶ 56.

Based on a total offense level of 33 and a criminal history category of I, the resulting Guideline range is 135 to 168 months' imprisonment. For the reasons set forth below, the government recommends a sentence at the low end of the resulting Guideline range.

## V.  SENTENCING FACTORS UNDER 18 U.S.C. §3553(a)

After calculating the advisory Guidelines range, a district court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, [a district court] may not presume that the Guidelines range is reasonable. [A district court] must make an individualized assessment based on the facts presented." *Gall*, 552 U.S. at 49-50 (citation and footnote omitted).

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

    (A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B)    to afford adequate deterrence to criminal conduct;

    (C)    to protect the public from further crimes of the Defendant; and

    (D)    to provide the Defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

Courts may not presume that the appropriate sentence necessarily lies within Guidelines range, but "the fact that § 3553(a) explicitly directs sentencing courts to consider the Guidelines supports the premise that district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Gall*, 552 U.S. at 50 n.6. Their relevance throughout the sentencing process stems in part from the fact that, while the Guidelines are advisory, "the sentencing statutes envision both the sentencing judge and the Commission as

carrying out the same basic § 3553(a) objectives," *Rita v. United States*, 551 U.S. 338, 348 (2007), and the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall*, 552 U.S. at 46; *see also Rita*, 551 U.S. at 349. To the extent a sentencing court varies from the Guidelines sentence, "[it] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Gall*, 552 U.S. at 50.

### a. Nature and Circumstances of the Offense

The nature and circumstances of Quintero's crime weigh towards a significant term of incarceration. Quintero pleaded guilty to her involvement in a conspiracy that lasted over two years to import large quantities of narcotics from Mexico into the United States via the port of entry in Nogales, Arizona, and to distribute them throughout the United States using established commercial shipping lanes.

During just three months of the two years, law enforcement seized 21 packages that contained 63.5 kilograms of drugs, including seven kilograms of fentanyl, during the height of the opioid epidemic in the United States. These seizures accounted for just 23 percent of the parcels that Soto and Quintero shipped under their scheme during that period. Based on these numbers, the conspiracy was shipping approximately 1,000 kilograms of drugs per year.

Quintero played a vital role in the drug trafficking organization's ("DTO's") distribution of these narcotics to numerous locations across the United States. Through her employment at FedEx Nogales, Quintero routinely received packages containing narcotics and ensured that they were shipped via FedEx to locations throughout the United States. Quintero knowingly utilized the compromised FedEx accounts of legitimate companies, which not only helped the DTO to avoid

detection and interdiction of the drugs but also defrauded both the companies and her employer, FedEx. Law enforcement identified at least twelve legitimate company accounts that were compromised and were being used by multiple drug couriers. During the course of the conspiracy, the total shipping costs charged to those twelve legitimate business accounts by Soto and Quintero exceeded $5.4 million dollars. *See* Exhibit B.

The large quantities of narcotics distributed by Quintero cause acute damages to the United States. Drug trafficking in the United States is responsible for not only addiction and death by overdosing, but also astronomical societal cost associated with law enforcement and medical treatment. For example, just the fentanyl seized by law enforcement in this case—seven kilograms—is enough for 3.5 million doses of fentanyl. *See* Drug Enforcement Administration, "Facts About Fentanyl," https://www.dea.gov/resources/facts-about-fentanyl (last accessed Oct. 23, 2023). The seriousness of the offense demands a sentence of 135 months' imprisonment.

### b.  The History and Characteristics of the Defendant

The government concurs with the PSR regarding Quintero's history and characteristics. As set forth in the PSR, Quintero has one known criminal conviction, a misdemeanor assault charge from 2017 in the Tucson Municipal Court in Tucson, Arizona. PSR ¶ 56. Quintero is a 47-year-old citizen of the United States and lifelong resident of Nogales, Arizona. PSR ¶¶ 63, 69.

Quintero graduated from Nogales High School in 1994 and attended Pima Community college in 1997, where she completed an office/account specialist certificate. PSR ¶ 78. Prior to her arrest, Quintero maintained legitimate employment. From 2009 to 2022, Quintero was employed by FedEx in Nogales, Arizona; however, she used that employment to commit the offense. PSR ¶ 83. She is now currently employed by Protrans as a Material Handler, but the employer is unaware of her pending legal case. PSR ¶ 82.

### c.  The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B)-(C); *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

Given the adverse impact that drug trafficking has on society and the serious detrimental effects of cocaine, methamphetamine, and fentanyl in communities, it is important that the Court impose a sentence that deters others from engaging in this activity and undermining the law. The international drug trade has many components—growers, producers, couriers, suppliers, brokers and dealers—to name a few. To profit from this illicit trade, drug traffickers must move the illicit drugs from where they are imported to other parts of the country where demand is high. While this prosecution disrupted some of the movement of illicit drugs within the country, continued drug trafficking plainly still occurs on a massive scale. The recommended sentence will send a clear message to other similarly situated drug traffickers that, regardless of role, such activities will result in substantial periods of incarceration.

Additionally, Quintero willingly participated in a conspiracy to exploit commercial shipping lanes to distribute controlled substances throughout the United States. The government acknowledges that Quintero accepted responsibility by entering into a plea agreement. However, her willingness to traffic drugs for personal gain establishes a need to deter her from engaging in similar conduct in the future.

### d.  Unwarranted Sentencing Disparities

Finally, 18 U.S.C. § 3553(a)(6) requires the Court to consider "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found

guilty of similar conduct." When determining whether a sentence creates an unwarranted disparity, the Court should also consider, *inter alia*, a defendant's acceptance of responsibility, the nature and extent of a defendant's participation in the criminal activity, a defendant's criminal history, and whether and to what extent a defendant cooperated. *See, e.g.*, *United States v. Mejia*, 597 F.3d 1329, 1344 (D.C. Cir. 2010) (concluding that difference in sentences was "entirely explained" by co-defendant's acceptance of responsibility and thus any disparity resulting from defendant's "harsher" sentence was not unwarranted). A defendant is only entitled to "a weighing of the section 3553(a) factors that are relevant to [his] case, not to a particular result." *United States v. Carrasco-De-Jesus*, 589 F.3d 22, 29 (1st Cir. 2009).

To date, one of the co-conspirators charged with Quintero has been sentenced. Benjamin Soto, a fellow FedEx employee, engaged in similar conduct of receiving packages from drug couriers at FedEx Nogales, and shipping the packages to destinations throughout the United States. Soto recruited Quintero into the shipping scheme and ensured she received regular compensation for her efforts. Soto was eligible for an additional two-level reduction pursuant to the "zero-point offender" provision at U.S.S.G. § 4C1.1, because he met eligibility criteria under the Amendments to the U.S. Sentencing Guidelines that went into effect on November 1, 2023. Soto's guidelines range was 108 to 135 months. The Court imposed a sentence of 108 months' imprisonment.

The government's recommended sentence for Quintero—135 months—is at the bottom of her Guideline range, and imposing this sentence will not create an unwarranted sentencing disparity with Soto. Unlike Soto, Quintero is not eligible for the "zero-point offender" reduction because Quintero pled guilty in 2017 to misdemeanor assault. PSR ¶ 56. The difference in their criminal history points and Quintero's disqualification from the § 4C1.1 reduction quashes any notion of unwarranted disparity.

12

Regarding defendants in other, unrelated cases, 18 U.S.C § 3553(a) does not require that the sentencing judge engage in a case-by-case comparison. This sentencing provision is aimed at national disparities; and courts have held that "the guidelines themselves are almost certainly the best indication of ordinary practice since most sentences are within the guidelines." *United States v. Saez*, 444 F.3d 15, 18-19 (1st Cir. 2006); *see also United States v. Boscarino,* 437 F.3d 634, 638 (7th Cir. 2006); *United States v. Gallegos,* 129 F.3d 1140, 1143 (10th Cir. 1997); *United States v. Hall,* 977 F.2d 861, 863-64 & n.4 (4th Cir. 1992); *United States v. LaSalle,* 948 F.2d 215, 218 (6th Cir. 1991); *United States v. Joyner,* 924 F.2d 454, 460-61 (2d Cir. 1991).

The government, however, has identified one defendant whose conduct was comparable to Quintero's and further supports a Guidelines sentence of 135 months.

In *United States v. Fitzgerald*, the defendant Christopher Fitzgerald used his position as a FedEx delivery driver to help a Cleveland, Ohio-based narcotics distributor deliver cocaine from California and Arizona to the Cleveland area. 754 Fed. App'x 351 (6th Cir. 2018). Each cocaine shipment contained between one and two kilograms of cocaine, and shipments were consistent, as frequent as once per week. *Id.* at 355. After receiving the FedEx packages, the local distributor stored drugs and money at a co-defendant's house, where drug shipments were divided into smaller quantities for distribution. *Id.* Fitzgerald, drawing on his eighteen years as a FedEx driver, suggested methods for the local distributor's shipments to evade detection by authorities. *Id.* He advised the local distributor to create a business account under a false name with an address located in a state not known as a "source" state for drugs. *Id.* Fitzgerald also recommended shipping to businesses such as hospitals and using hard black Pelican cases to ship the drugs, as investigators were less likely to attempt to open a locked case. *Id.* Fitzgerald occasionally paid another FedEx employee to pull detailed tracking information about packages when needed. *Id.*

Fitzgerald was found guilty at trial of conspiracy to distribute cocaine through FedEx, and distribution of cocaine. *Id.* at 357. Fitzgerald's Guidelines range was 188-235 months.[2] *Id.* The base offense level was 32, two levels were added based on his supervisory role, and a two-level obstruction of justice enhancement was added for perjury, pursuant to U.S.S.G. § 3C1.1. Fitzgerald was sentenced to 188 months' imprisonment. *Id.* at 357, 370.

## VI.    CONCLUSION

For the reasons set forth above, the government recommends that the Court impose a sentence of imprisonment of 135 months, 60 months of supervised release, and the mandatory $100 special assessment.

Respectfully submitted,

MARLON COBAR, Chief
Narcotic and Dangerous Drugs Section
Criminal Division
U.S. Department of Justice

BY:    */s/ Douglas Meisel*
Douglas Meisel
Kate Naseef
Mingda Hang
Trial Attorneys
Narcotic and Dangerous Drugs Section
Criminal Division
U.S. Department of Justice
145 N. St. N.E.
Ste. 2E300
Washington, D.C. 20530
Telephone: 202-598-2281

---

[2] Fitzgerald's Guidelines would have likely been 108-135 months if he had accepted responsibility, and therefore the obstruction enhancement would not have been applied.

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was sent via ECF to counsel of record for the

Defendant, this 2nd day of April 2024.

By:     */s/ Douglas Meisel*
Douglas Meisel
Trial Attorney
Narcotic and Dangerous Drug Section
Criminal Division
U.S. Department of Justice
145 N Street NE
Second Floor, East Wing
Washington, DC 20530
Office: (202) 598-2281